United States District Court
Middle District of Florida
Jacksonville Division

**IATRICE EDWARDS,**

    *Plaintiff,*

v.                                                                                                     No. 3:18-cv-637-J-39PDB

**CIS SERVICES, LLC, ETC.,**

    *Defendants.*

## Order

Before the Court in this Fair Labor Standards Act ("FLSA") case are defense motions to strike three opt-in consents,[1] Docs. 167, 179, and responses in opposition, Docs. 169, 180.[2] The opt-in consents are for Angela Douglas, Doc. 148, Sheri Gower,[3] Doc. 174, and Lisa Brown, Doc. 175.

FLSA allows an employee to sue an employer to recover unpaid overtime compensation. 29 U.S.C. § 216(b). For efficiency in resolving claims by multiple employees, FLSA permits "any one or more employees for and in behalf of himself or themselves and other employees similarly situated" to bring a single action. 29 U.S.C. § 216(b); *see Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (explaining purpose of collective-action provision). FLSA specifies "[n]o employee shall be a party

---

[1]A general background of this case is in the report and recommendation entered on May 3, 2019, in the companion case, *Lockwood v. CIS Servs., LLC, etc.,* 3:16-cv-965-J-39PDB (Doc. 237).

[2]In the responses, counsel attaches proposed orders. *See* Docs. 169-2, 180-3. For future filings, please see United States District Court, Middle District of Florida, Administrative Procedures for Electronic Filing, § IV.A.4, which provides: "No proposed order … may be submitted unless authorized by the assigned judge."

[3]Gower appears to spell her last name "Gower," Doc. 174, but her surname is spelled "Gowar" on the docket entry for her consent.

plaintiff to any such action unless he gives his consent in writing … and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

FLSA specifies no procedures for collective actions, leaving courts discretion to manage them. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). In doing so, courts must ensure that joining additional plaintiffs "is accomplished in an efficient and proper way," i.e., "in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann-La Roche*, 493 U.S. at 170–71.

The Eleventh Circuit suggests a two-tiered approach. *Hipp*, 252 F.3d at 1218. At the first stage, a court decides whether employees should receive a notice and an opportunity to opt-in to the action. *Id.* "Court authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-LaRoche Inc.*, 493 U.S. at 172.

This action is in that first stage. The Court conditionally certified this action as a collective one and outlined procedures for joining additional plaintiffs. Doc. 91. In the conditional-certification order, the Court directed: "Plaintiffs shall transmit the Notice of Lawsuit … and Consent to Sue … to potential class members no later than **December 26, 2018**." Doc. 91 at 10 (emphasis in original). The Court further directed: "Potential class members shall opt-in **no later than February 11, 2019**." Doc. 91 at 10 (emphasis in original).

The ensuing notice to potential opt-in plaintiffs warned, "The Consent Form **must be received** by Plaintiffs' Counsel on or before [February 11, 2019] for you to participate in this case. If you fail to return the completed consent form to Plaintiffs' counsel you may not be able to participate in this lawsuit." Doc. 56-6 at 4 (emphasis in original). The consent form sent to potential opt-in plaintiffs directed, "**PLEASE RETURN THIS FORM VIA MAIL OR FAX BY [FEBRUARY 11, 2019]**." Doc. 56-7 at 3 (emphasis in original); *see, e.g.,* Doc. 174 at 2.

Citing Federal Rule of Civil Procedure 12(f), the defendants ask the Court to "strike" the assertedly late opt-in consents of Douglas, Gower, and Brown, essentially asking the Court to not allow them to join this action as opt-in plaintiffs because of their delay. Docs. 167, 179.

Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 7(a) defines a "pleading" as a complaint; an answer to a complaint, counterclaim, or crossclaim; a third-party complaint; and (if the court orders one) a reply to an answer.

Rule 12(f) does not apply here. An opt-in consent is the written consent required by FLSA's collective-action provision, 29 U.S.C. § 216(b), not a pleading under Rule 7(a). Even if an opt-in consent could be construed as a pleading for that consenting plaintiff (in essence, a copy of the actual pleading for that consenting plaintiff), a late opt-in consent cannot be reasonably described as a "redundant," "immaterial," "impertinent," or "scandalous" matter within a pleading.

Instead, Rules 1 and 6(b)(1) apply here. Rule 1 provides that a court should construe and administer the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. Rule 6(b)(1) provides that, "When an act must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect."

For an after-the-fact extension, Rule 6(b)(1) therefore requires a motion showing excusable neglect. *Mathis v. Adams*, 577 F. App'x 966, 967 (11th Cir. 2014). Rule 6(b)(1) "applies generally, when a more precise rule does not govern the situation." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1338 n.8 (11th Cir. 2014).

There is a "range of possible explanations for a party's failure to comply with a court-ordered filing deadline." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 387 (1993). "At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as by an act of God or unforeseeable human intervention." *Id.* "At the other, a party simply may choose to flout a deadline." *Id.* at 387–88. "In between lie cases where a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse, as well as cases where a party misses a deadline through inadvertence, miscalculation, or negligence." *Id.* at 388.

When empowered to forgive late filings because of "excusable neglect," courts are "permitted, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *See id.* (interpreting "excusable neglect" in Federal Rule of Bankruptcy Procedure 9006(b)(1) and observing that rule is patterned after Rule 6(b)).

The issue of whether neglect is "excusable" is "at bottom an equitable one." *Id.* at 395. Considerations include the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. *Advanced Estimating Sys., Inc. v. Riney*, 77 F.3d 1322, 1325 (11th Cir. 1996). In a FLSA action, courts also have considered the remedial purpose of the law. *See, e.g., Ruggles v. Wellpoint, Inc.*, 687 F. Supp. 2d 30, 37 (N.D.N.Y. 2009); *see also Kelley v. Alamo*, 964 F.2d 747, 749–50 (8th Cir. 1992) ("A generous reading, in favor of those whom congress intended to benefit from the law, is also appropriate when considering issues of time limits and deadlines."); *Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-2053-RMG, 2019 WL 351255, at *1 (D.S.C. Jan. 28, 2019) (unpublished) (permitting plaintiff to join in part because joinder served remedial purpose of FLSA and because discovery was ongoing).

Counsel filed opt-in consents for more than fifty-five people before the February 11, 2019, deadline in the conditional-certification order. Docs. 7, 9–12, 14–

17, 19–20, 28–33, 35, 59, 69, 71, 74, 80–81, 86, 95, 97–98, 101, 107–16, 118–25, 128–38. But counsel filed no opt-in consent for Douglas until March 22, 2019, and for Gower and Brown until May 31, 2019. Docs. 148, 174, 175.

Turning first to Douglas, she dates her consent February 8, 2019. Doc. 148 at 2. The envelope in which she mailed the consent to counsel has no postmark. Doc. 169-1 at 4. Counsel states he received the consent on February 25, 2019, suggests delivery may have taken a few weeks, explains he "immediately" contacted defense counsel about the delay, and represents he mistakenly believed he had filed the consent on February 28. Doc. 169 at 2. Douglas seeks about four weeks of "overtime." Doc. 169 at 2.

The conditional-certification order made clear potential plaintiffs had to opt-in by February 11, 2019, but failed to make clear what they had to do to opt-in by that date: (1) sign the consent by that date; (2) mail or fax the consent to counsel by that date; (3) mail or fax the consent to counsel so it arrived by that date; or (4) file the consent on the record by that date. *See generally* Doc. 91 at 10 ("Potential class members shall opt-in **no later than February 11, 2019**.") (emphasis in original). The notice to potential plaintiffs suggests the third possibility. *See* Doc. 56-6 at 4 ("The Consent Form **must be received** by Plaintiffs' Counsel on or before [February 11, 2019] for you to participate in this case.") (emphasis in original). The consent form sent to potential opt-in plaintiffs with the notice suggests the second possibility. *See* Doc. 56-7 at 3 ("**PLEASE RETURN THIS FORM VIA MAIL OR FAX BY [FEBRUARY 11, 2019]**.") (emphasis in original).

Construing the ambiguity in favor of Douglas in fairness, and considering that she dated the consent days before the February 11, 2019, deadline, her consent is deemed timely filed, Doc. 148, and the motion to strike her consent, Doc. 167, is **denied**.

Turning to Gower, she dates her consent May 1, 2019. Doc. 174 at 2. Underneath her signature, she handwrites, "Please accept this as I just received this.

Thank you." Doc. 174 at 2. The envelope in which she mailed the consent to counsel is postmarked May 20, 2019. Doc. 180-1. Counsel states he received the consent on May 23, 2019. Doc. 180 at 2. Gower seeks eight months of "recoverable time." Doc. 180 at 2. The plaintiffs do not explain how Gower could have "just received" the notice sent at the end of last year. *See generally* Doc. 180.

Turning to Brown, she dates her consent May 11, 2019. Doc. 175 at 2. The envelope in which she mailed the consent to counsel is postmarked May 22, 2019. Doc. 180-2. Counsel states he received the consent on May 29, 2019. Doc. 180 at 2. Brown seeks six weeks of "recoverable time." Doc. 175 at 2. The plaintiffs provide no explanation why Brown signed and mailed the consent months after the February 11, 2019, deadline. *See generally* Doc. 180.

In a footnote in the response in opposition to the motion to strike Gower's and Brown's consents, the plaintiffs state without elaboration they believe no leave to file the belated consents is necessary but request leave if the Court determines otherwise. Doc. 180 at 2. Given the Court's conditional-certification order ("Potential class members shall opt-in **no later than February 11, 2019**," Doc. 91 at 10) and the plain language of Rule 6(b)(1)(B) ("When an act must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect."), the basis for the plaintiffs' belief is unclear. And an unadorned request for relief in a footnote to a response to a motion is not a proper motion under Local Rule 3.01.

Without a proper motion, the Court is without authority to extend the time to consent for Gower and Brown and is without information on two considerations pertinent to whether there is excusable neglect: the reasons for Gower's and Brown's delays and whether Gower and Brown acted in good faith. If the Court construed the footnote request as a proper motion or found a proper motion unnecessary, and if the Court presumed the worst given the absence of explanation (i.e., Gower and Brown flouted the deadline, *see Pioneer*, 507 U.S. at 387–88), the balance does not tip in favor of Gower and Brown. Under the presumption, those two considerations (the reason

6

for the delay and whether they acted in good faith) would favor the defendants, the length of the delay would favor the defendants (months, not days), the remedial purpose of FLSA would favor Gower and Brown, and the other considerations would be in equipoise or nearly so. On one hand, as the plaintiffs emphasize, there are no active deadlines and Gower and Brown can file their own lawsuits, creating more expense for the parties and more work for the Court. Doc. 180 at 3–4. On the other hand, defendants in collective actions ordinarily and reasonably rely on firm cut-off dates to assess their risk exposure and defend the action accordingly, and the Court in the companion case was not swayed by the possibility of a separate legal action in denying the joint request to extend the consent deadline and expand the scope of potential opt-in plaintiffs. *See Lockwood*, 3:16-cv-965 (Doc. 181 at 3–4).

The motion concerning Gower and Brown, Doc. 179, is **granted** to the extent their consents are deemed untimely but is otherwise **denied**. Should the action not settle at tomorrow's conference, Gower and Brown may file motions under Rule 6(b)(6) to try to show excusable neglect.

**Ordered** in Jacksonville, Florida, on August 28, 2019.

PATRICIA D. BARKSDALE
United States Magistrate Judge

c: Counsel of record

7